UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

WISHBONE MEDICAL, INC.
and NICK A. DEETER,

Plaintiffs,

v.

PROFESSIONAL SOLUTIONS
INSURANCE COMPANY,

Defendant.

CAUSE NO. 3:24cv496 DRL-SJF

## OPINION AND ORDER

In large measure, this is a coverage action spinning off from a separate lawsuit against WishBone Medical, Inc. and Nick A. Deeter for patent infringement. WishBone and Mr. Deeter made a claim to their insurer, Professional Solutions Insurance Company (PSIC). Nearly three years after filing the claim, PSIC denied coverage. WishBone sued for breach of contract and negligence and requested a declaratory judgment for coverage. Crossmotions for summary judgment ensued. The court now rules.

## BACKGROUND

WishBone manufactures pediatric orthopedic implants and other medical equipment. PSIC underwrote and issued a management liability insurance policy to WishBone effective July 15, 2020 through July 15, 2021 [66-5 at 1]. The policy had three applicable insuring agreements. The first two covered an "insured person" and applied whether the person was indemnified or not by the insured organization [*id.* 19]. The third applied to the insured organization [*id.*]. No

party disputes that WishBone was the named insured under the policy or that Mr. Deeter was an insured person.

This dispute instead focuses on other provisions of the policy. First, a pending or prior litigation exclusion states that no coverage exists for any loss or claim:

> based upon, arising out of, or attributable to any Claim against any Insured which was pending on or existed prior to the respective Pending or Prior Date for this Coverage Section, set forth in the Coverage Schedule in ITEM 8 of the Declarations, or the same or substantially the same fact, circumstance or Wrongful Acts alleged in or underlying such prior Claim.[1]

[*id.* 26]. Second, a single claims provision states as follows:

> All claims under the Liability Coverage Sections which arise out of the same Wrongful Act or Interrelated Wrongful Act shall be deemed one Claim, and such Claim shall be deemed to be first made on the date the earliest of such Claims is first made against any Insured, regardless of whether such date is before or during the Policy Period. In no event shall a single lawsuit or proceeding constitute more than one Claim.

[*id.* 11]. The policy defines an "Interrelated Wrongful Act" as "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes" [*id.* 6]. The policy doesn't define "common nexus."

This lawsuit references two others—one filed in Indiana state court, and another filed in federal court. In the state case, on May 15, 2017, OrthoPediatrics sued Dr. Robert von Seggern and WishBone in Whitley County, Indiana [66-2]. *See OrthoPediatrics Corp. v. Robert Von Seggern and WishBone Medical, Inc.* (92D01-1705-PL-000150). OrthoPediatrics alleged Dr. von Seggern, its

---

[1] ITEM 8 provides a coverage schedule laying out policy limits and sublimits for various types of coverage [66-5]. The court has omitted bold-type in quoting the policy throughout this opinion for readability.

former employee, violated a restrictive covenant in his employment agreement when he began working for Wishbone in 2017 and disclosed to WishBone confidential information he learned while working for OrthoPediatrics [*id.* ¶ 18-43]. In that suit, OrthoPediatrics asserted claims for breach of contract against Dr. von Seggern, unfair competition against both defendants, tortious interference with a contract against WishBone, and specific performance of its contract with Dr. Von Seggern, as well as requested a preliminary and permanent injunction against Dr. von Seggern enjoining him from violating the employment agreement [*id.* ¶ 44-77]. OrthoPediatrics filed an amended complaint on December 21, 2017 [73-3]. The amended complaint added claims for violations of the Indiana Uniform Trade Secrets Act and the Defend Trade Secrets Act against both WishBone and Dr. von Seggern [*id.* ¶ 104-141], added WishBone to the request for injunctive relief [*id.* ¶ 151-159], and elaborated that the alleged misappropriation pertained to OrthoPediatrics's "Locking Proximal Femur instruments and their relationship with all the implantable plates within the Locking Proximal Femur System" [*id.* ¶ 63-64, 72-73, 104-141].

In federal court, on October 30, 2020, OrthoPediatrics and Orthex, LLC filed a patent infringement action against WishBone and Mr. Deeter [66-1]. *See OrthoPediatrics Corp. and Orthex, LLC v. WishBone Medical, Inc. and Nick A. Deeter* (3:20cv929). The plaintiffs alleged Mr. Deeter, a former employee of OrthoPediatrics and founder of WishBone, took proprietary information with him when he left OrthoPediatrics in 2013 and had recently received FDA clearance for a medical device that infringed on a patent of which Orthex, a wholly-owned subsidiary of OrthoPediatrics, was the assignee [*id.* ¶ 5-8]. The complaint alleged that the patent, U.S. Patent No. 10,258,377 entitled "Point and click alignment method for orthopedic surgeons, and surgical and clinical accessories and devices," was issued on April 16, 2019 [*id.* ¶ 33]. The plaintiffs also

alleged Mr. Deeter made disparaging and false remarks about OrthoPediatrics in violation of a severance agreement reached when he resigned from OrthoPediatrics and that other WishBone employees made similar statements too [*id.* ¶ 9, 49-61]. The federal suit advanced claims for patent infringement against WishBone, unfair competition and false advertising against both defendants, breach of contract against Mr. Deeter, defamation *per se* against both defendants, tortious interference with contractual relationships against both defendants, and tortious interference with prospective contractual relationships against both defendants [*id.* ¶ 62-111].

That brings us back here. After the patent lawsuit commenced, WishBone submitted a claim notice to PSIC (and PSIC's claims manager, Nexus Specialty, Inc.) on November 10, 2020 [78-8]. On November 13, 2020, WishBone received an acknowledgement email from PSIC [78-9]. The email contained a claim reference number and said someone from Nexus would be handling the matter on its behalf and that she would "be in contact [] shortly with [PSIC's] response to this notification" [*id.*].

Sometime between this acknowledgement in November 2020 and April 2021, someone at Nexus, either the assigned claims adjuster or Nexus's vice-president and head of claims, administratively toggled WishBone's claim from opened to closed [78-4 Tr. 157-58, 303]. This wasn't discovered by Nexus until May 30, 2023, when WishBone's counsel emailed the Nexus claims adjuster inquiring about the claim's status, as WishBone hadn't received any additional correspondence from Nexus since its acknowledgement of receiving the claim [78-14]. A Nexus corporate representative testified that the claim file shouldn't have been closed [78-4 Tr. 160-61] and the error in closure was "[i]n a sense" the reason why no reservation of rights letter was

issued [*id.* Tr. 162-63]. He also said Nexus's handling of the claim didn't comport with its own best practices or industry standards [*id.* Tr. 163].

PSIC thereafter denied coverage in a letter dated June 12, 2023 [78-15]. The letter explains that coverage would not be afforded for the patent lawsuit because PSIC (and Nexus as its agent) determined the lawsuit "related to a prior litigation between the parties first filed on May 15, 2017"—the Whitley County lawsuit—so the claim was deemed made "years before the inception of the policy in 2020." The denial letter noted that the complaint in the federal patent suit quoted the state suit, attached an order from that state lawsuit, and advanced the same unfair competition claim in connection with WishBone's alleged use of OrthoPediatrics confidential information and trade secrets. In short, the state suit was "the heart of the allegation at issue in the complaint in the [patent lawsuit]." Because the state suit constituted a claim under the policy, and because the policy treated matters with interrelated wrongful acts as one claim deemed to be first made on the earliest date such claim was asserted, PSIC said the policy excluded coverage. The denial letter also referenced other policy provisions excluding or limiting coverage for the patent lawsuit, including the pending or prior litigation exclusion and various other bases under which PSIC reserved its rights. Nexus's representative confirmed in testimony that the two primary reasons for denying coverage were the interrelated wrongful acts and pending/prior litigation provisions of the policy [78-4 Tr. 239].

On November 16, 2023, WishBone responded to the denial letter demanding defense and indemnity, or alternatively reimbursement for the cost of defending the patent suit, asserting the state suit and the federal suit were materially dissimilar [78-16]. PSIC and Nexus responded on November 27, 2023, informing WishBone that PSIC was standing by its previous coverage

position [78-17]. WishBone filed this suit thereafter on June 21, 2024. It named both PSIC and Nexus as defendants, but today the case proceeds only against PSIC. *See WishBone Med., Inc. and Nick A. Deeter v. Nexus Specialty, Inc. and Prof'l Sols. Ins.*, 2024 U.S. Dist. LEXIS 216030, 4-9 (N.D. Ind. Nov. 27, 2024); *see also WishBone Med., Inc. and Nick A. Deeter v. Prof'l Sols. Ins.*, 2025 U.S. Dist. LEXIS 105908, 10 (N.D. Ind. June 3, 2025).

## STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in his favor. *Weaver v. Speedway, LLC*, 28 F.4th 816, 820 (7th Cir. 2022). The court must construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1051 (7th Cir. 2020), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

With crossmotions, each party receives the benefit of all reasonable inferences drawn from the record when considering the opposing party's motion. *Tegtmeier v. Midwest Operating Eng'rs Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (citation omitted). In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Instead, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* The court must grant a summary

judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 (7th Cir. 2011).

### DISCUSSION

As an initial matter, as mentioned by WishBone, PSIC has not responded properly to WishBone's partial summary judgment motion. Of course, the parties never conferred and submitted a proposed consolidated briefing schedule, as required by the court either. Rather than strike both party's initial filings for summary judgment, the court ordered PSIC to file one consolidated brief that both replied in support of its own motion and also responded in opposition to WishBone's motion. On November 18, 2025, PSIC filed this brief. Though it presented arguments supporting its own motion, it curiously left unaddressed WishBone's crossmotion and failed to include any response to WishBone's statement of material facts. *See* N.D. Ind. L.R. 56-1(b), (c)(2).

Under Local Rule 56-1 and Federal Rule of Civil Procedure 56(e), when a party fails to address another party's asserted facts in the manner required, the court may treat these facts as undisputed for purposes of the motion. Accordingly, the court will treat WishBone's properly supported statement of material facts as undisputed when considering its motion, insofar as they have not been placed in dispute in the exchange of statements of material facts. Fed. R. Civ. P. 56(e)(2); L.R. 56-1(e); *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). Because the crossmotions present substantially overlapping issues, arguments, and evidentiary submissions, this does not mean that WishBone simply prevails.

Sitting in diversity, the court applies Indiana's choice-of-law rules. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78 (1938); *Ruiz v. Blentech Corp.,* 89 F.3d 320, 323 (7th Cir. 1996). The

policy doesn't contain a choice-of-law provision, but both parties argue their respective provisions under Indiana law, so the court follows suit because no conflict of laws has been presented. *See Great West Cas. Co. v. Robbins*, 833 F.3d 711, 715 (7th Cir. 2016); *see also McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014); *Simon v. United States*, 805 N.E.2d 798, 805 (Ind. 2004).

A. *Declaratory Judgment and Contract Claims (Counts 1 and 2).*

"The essential elements of a breach of contract action are the existence of a contract, the defendant's breach [], and damages." *Berg v. Berg*, 170 N.E.3d 224, 231 (Ind. 2021) (citation omitted). An insurance policy is a contract subject to rules of construction. *State Farm Mut. Auto. Ins. v. Jakubowicz*, 56 N.E.3d 617, 619 (Ind. 2016); *Dunn v. Meridian Mut. Ins.*, 836 N.E.2d 249, 251 (Ind. 2005). Contractual interpretation is generally a question of law, *Song v. Iatarola*, 76 N.E.3d 926, 933 (Ind. Ct. App. 2017), controlled by the parties' intent as expressed by clear contractual language, *City of Jeffersonville v. Env't Mgmt. Corp.*, 954 N.E.2d 1000, 1008 (Ind. Ct. App. 2011). "When confronted with a dispute over the meaning of insurance policy terms, Indiana courts afford clear and unambiguous policy language its plain, ordinary meaning." *Erie Indem. Co. v. Est. of Harris*, 99 N.E.3d 625, 630 (Ind. 2018).

The court interprets "policy terms from the perspective of the ordinary policyholder of average intelligence." *Ind. Farmers Mut. Ins. v. Weaver*, 120 N.E.3d 280, 284 (Ind. Ct. App. 2019); *accord Erie Indem.*, 99 N.E.3d at 630; *Frankenmuth Mut. Ins. v. Fun F/X II, Inc.*, 601 F. Supp.3d 330, 337 (N.D. Ind. 2022), *aff'd*, 61 F.4th 514 (7th Cir. Feb. 28, 2023). The court's job is "to ascertain and enforce the parties' intent as manifested in the insurance contract," *Berkshire Hathaway Homestate Ins. v. Basham*, 113 N.E.3d 630, 634 (Ind. Ct. App. 2018) (citations omitted),

to interpret a contract "so as to harmonize its provisions, rather than place them in conflict," and to look at the contract as a whole, *Dunn*, 836 N.E.2d at 252; *see also Bowen v. Monroe Guaranty Ins.* 758 N.E.2d 976, 980 (Ind. Ct. App. 2001) (courts "must interpret the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless.") (quotation omitted).

Mere disagreement about a provision's meaning or a lack of definition in the policy doesn't render a provision ambiguous. *G&G Oil Co. of Ind. v. Cont'l W. Ins.*, 165 N.E.3d 82, 87 (Ind. 2021). A court will only find terms ambiguous when intelligent policyholders could honestly disagree about the policy's meaning, else the court applies the plain and ordinary meaning of the policy's terms. *See id.*; *Erie Indem.*, 99 N.E.3d at 630. If an ambiguity exists, courts interpret an insurance contract to favor the insured to further the policy's basic purpose of indemnity. *Allgood v. Meridian Sec. Ins.*, 836 N.E.2d 243, 246-47 (Ind. 2005). This distinct rule of construction applies then because of the "disparity in bargaining power" between insurer and the insured, *Auto-Owners Ins. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006), recognizing that "the insurer drafts the policy and foists its terms upon the customer," *American States Ins. v. Kiger*, 662 N.E.2d 945, 947 (Ind. 1996); *accord Lafayette Life Ins. v. Arch Ins.*, 784 F. Supp.2d 1034, 1040 (N.D. Ind. 2011) ("Coverage exclusions must be expressed plainly, and in cases of doubt or ambiguity exclusion clauses are construed against the insurer and in favor of coverage."). "Proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment." *American Home Assur. Co. v. Allen*, 814 N.E.2d 662, 666 (Ind. Ct. App. 2004) (citing *Colonial Penn Ins. v. Guzorek*, 690 N.E.2d 664, 667 (Ind. 1997)).

PSIC disputes coverage based on two provisions in the policy—the first resting on the definition of what the policy calls an Interrelated Wrongful Act. PSIC says this defined term links

9

the federal case and state case in such a way as to deem the claims first made against WishBone on the date of the earliest suit. It is a timing maneuver in construction that would bar coverage for the federal claims by setting the date of the claim as outside the policy period. Generally, multiple claims will be deemed a single claim when they arise from wrongful acts that share a common nexus. WishBone argues that the term "common nexus" within this definition of an Interrelated Wrongful Act is ambiguous, whereas PSIC thinks the term "common nexus" is unambiguous and expansive. The insurer reads this to mean that a "single factual overlap" is all that is needed to treat different claims together as one.

The policy states that all claims that arise out of an Interrelated Wrongful Act (or the same Wrongful Act) will be deemed a single claim, and one first made on the earliest date it was asserted against the insured. The policy's definition of Interrelated Wrongful Act introduces this concept of a common nexus: "all Wrongful Acts that have as a common nexus any fact, circumstance, situation, event, transaction, cause, or series of related facts, circumstances, situations, events, transactions or causes" [66-5]. At times, the parties tend to focus on whether the two lawsuits share such a common nexus, but this single claim provision has been written a little differently. More precisely, the wrongful acts must share a common nexus, either of fact, or situation, or transaction, for instance, and the claims in the suits must arise from the same wrongful act or an interrelated one (as defined). The policy defines a wrongful act, generally for either the organization or for one of its insured persons, as any "actual or alleged act, error, misstatement, misleading statement, neglect, breach of duty, omission or act" [*id.*].

The court applies the term's plain and ordinary meaning, *see Erie Indem.*, 99 N.E.3d at 630, with due regard to its dictionary definition, *see Reed v. Reid*, 980 N.E.2d 277, 289 (Ind. 2012); *G&G*

*Oil*, 165 N.E.3d at 88 (utilizing "multiple sources including dictionary definitions" to apply the ordinary meaning of a term in an insurance policy); *see also Lafayette Life*, 784 F. Supp.2d at 1042-43 ("A contract's definitions apply only when the defined term is actually used; when undefined terms are used they are given their plain and ordinary meaning."). "Nexus" means something bonded, linked, joined, or otherwise connected together. *See Nexus*, Oxford English Dictionary 1.a (last visited July 29, 2026) ("A bond, link, or junction; a means of connection between things or parts; (also) the state of being connected or linked."); *see also Nexus*, Black's Law Dictionary (12th ed. 2024) ("A connection or link, often a causal one."). And "common" simply means that it is shared.

In application, other courts confronted with this same question have afforded this term this same meaning. *See Connect Am. Holdings, LLC v. Arch Ins.*, 174 F. Supp.3d 894, 901-02 (E.D. Penn. 2016) ("Drawing on these definitions, we conclude that a common nexus requires a link between the acts."); *S.D. Network, LLC v. Twin City Fire Ins.*, 2017 U.S. Dist. LEXIS 154886, 20-21 (D.S.D. Sep. 22, 2017) ("Based on this definition, the court finds that a common nexus requires a causal connection or a link between the two 'wrongful acts.' In other words, there must be two separate actions by the insured that are linked together….the two actions must have linked or casually connected facts."). Accordingly, the court adopts this meaning of "common nexus" as requiring a common link or connection between the wrongful acts for purposes of triggering this provision.

PSIC argues that the two lawsuits share a common nexus because both seek similar forms of relief and, from its perspective, arise from WishBone's (including Mr. Deeter's) alleged misuse of OrthoPediatrics's patents and confidential information. The insurer says both suits seek

compensatory damages from misuse of proprietary information and permanent injunctions barring the defendants in these suits from disclosing information to competitors or from selling products infringing on a patent. In contrast, WishBone argues that the two cases are factually dissimilar, involve different causes of action and claims, stem from different provisions in different contracts with former OrthoPediatric employees, and pertain to different products addressing different medical issues.

Even viewing the evidence in the light most favorable to PSIC, PSIC presents a rather unconvincing perspective. The company hasn't identified a fact, circumstance, event, transaction, or cause that creates a "common nexus" between the alleged wrongful acts in the lawsuits. PSIC says both suits were caused by "WishBone and Nick Deeter's alleged violation of OrthoPediatrics' patents and misuse of its confidential information," but that statement is just on its face wrong. The amended complaint in the state case alleges no patent infringement, and the federal patent suit alleges no misuse of OrthoPediatrics's confidential information. Nor is Mr. Deeter a defendant in the state suit. But a deeper dive into the alleged wrongful acts makes the conclusion about the lack of a common nexus rather inescapable.

For one, the two suits describe different courses of conduct arising from the separation and hiring of different former employees at different times having different obligations under different agreements—thus different facts, different transactions, and different circumstances. The state case concerns at the start Dr. von Seggern. His January 31, 2010 employment agreement, as amended in March 2010 and February 2011 and preserved by his January 2017 severance agreement, prohibited competitive employment, employee solicitation, and the use or disclosure of confidential information or trade secrets [78-12]. As amended, the state pleading

alleges that Dr. von Seggern violated these obligations in early 2017 by working for WishBone, continuing that work through a consulting group after the termination of his employment, and transmitting specific OrthoPediatrics information to the consulting group and WishBone. In contrast, the federal case concerns at the start Mr. Deeter. His severance agreement arose from his resignation effective June 3, 2013, and the federal pleading alleges that he breached the severance agreement's nondisparagement provision through certain false public statements in 2020 [78-6]. OrthoPediatrics alleges that his false statements constitute unfair competition, false advertising, and corporate disparagement, and that his statements have tortiously interfered with the company's contractual or prospective business relationships. These two men had different jobs at WishBone. They allegedly did different bad things. They committed their allegedly wrongful conduct years apart. No common employment decision, communication, deed, or contractual obligation underlies the alleged wrongful acts against Dr. von Seggern and Mr. Deeter, much less then WishBone as a party alleged to be responsible in cahoots with these two men or the improper beneficiary of their separate conduct.

For another reason, the two suits concern different protectible information and different products. The state case concerns confidential information and trade secrets, whereas the federal suit concerns a patent. A trade secret is altogether different in nature from a patent—one is secret when the other is not, literally by design. *See Atl. Rsch. Mktg. Sys., Inc. v. Troy*, 659 F.3d 1345, 1357 (Fed. Cir. 2011). The state case concerns a locking proximal femur plate system (an internal fixation device that corrects deformities of the proximal femur in children) and the protectible information pertinent to it (an analysis report and sales information misused in 2017, for instance), whereas the federal suit concerns a "Smart Correction" external fixation system used

13

for adults that WishBone developed through a company it acquired in 2018 (Response Ortho) and allegedly infringed a patent that issued to OrthoPediatrics in 2019. Nothing on this record links for a reasonable jury the wrongful acts attendant to these different rights and different products.

For yet another reason, the two suits seek different relief. PSIC presents a nifty chart that all but makes the point against it. Just because both cases seek a "permanent injunction" or seek "compensatory damages" does not mean that the alleged wrongful acts in both suits are interrelated—that they share a common nexus of fact, circumstance, situation, event, transaction, or cause—else at this sheer level of generality every suit that sought compensatory damages, which most civil suits seek, would be interrelated to any other that did so. No ordinary policyholder of average intelligence would understand this term so absurdly. The state suit seeks a permanent injunction to stop misuse of confidential information that OrthoPediatrics developed and protected against its competitors, and seeks damages for its misuse and for unfair competition. The federal suit seeks a permanent injunction because the defendants there allegedly violated a patent, and OrthoPediatrics wants to stop the infringement and recover damages because of that infringement (or false or disparaging statements). Not every permanent injunction is the same. Not every request for compensatory damages is the same either. Nor do they share an underpinning here.

PSIC notes that the federal suit references the state suit. True enough, for OrthoPediatrics alleged in its patent infringement case that the company previously sued WishBone and "another" former employee in state court and that the company sought sanctions for WishBone's failure to comply with discovery obligations, including interference by its chief executive officer, Mr.

14

Deeter. And from the allegations why was this done? It was not to say the two suits arose from wrongful acts that share a common nexus of fact, circumstance, or some transaction—for no such thing was pleaded and no abstention request came—but to paint Mr. Deeter as a bad actor, and WishBone as the company he now led, as a bad actor, before turning to allege the unique and different claims against him and the company in this new suit. The federal complaint also referenced another federal action in Florida commenced by a company partially owned by WishBone against OrthoPediatrics (and others). These references might illustrate the contentious litigation existing between the industry competitors in WishBone and OrthoPediatrics, but in substance they cannot be read as anything more than what they are in the hands of creative attorneys who zealously plead theories for their clients.

In short, neither suit relies on the other to come to its own independent conclusion, and neither suit requires adjudication of, or otherwise arises from, the same or interrelated wrongful act due to some shared fact, circumstance, situation, event, transaction, or cause. And there is no allegation that serializes facts, circumstances, transactions, or any such things to make it so. Thus, though the court disagrees with WishBone and finds the term "common nexus" to be unambiguous, the court agrees with WishBone that no reasonable jury could find for PSIC that this single claim provision bars coverage for the federal suit. *See, e.g., Connect Am. Holdings,* 174 F. Supp.3d at 903-04 (no common nexus when means used in each alleged scheme and conduct was different, and conduct occurred at different times, in part because the latter action "alleged a new and different scheme taking place at a different time" that "was not part of the one occurring years earlier" alleged in the earlier action); *KB Home v. St. Paul Mercury Ins.,* 621 F. Supp.2d 1271, 1277-78 (S.D. Fla. 2008) (employment discrimination claim that arose partially out of managers'

15

behavior during a company function wasn't related to later employment discrimination claim regarding conduct that occurred after other claimant left the company because latter claim didn't provide any "fact, circumstance, situation, event, transaction" shared between the claims); *Axis Surplus Ins. v. Johnson*, 2008 U.S. Dist. LEXIS 77614, 23 (N.D. Okla. Oct. 3, 2008) (claims didn't involve a "common nexus" when one alleged the insureds breached an agreement to relieve the plaintiffs of their obligations as loan guarantors and the other didn't mention that loan but instead alleged the insureds mismanaged the company in other respects). Accordingly, for these crossmotions, the court must grant summary judgment for WishBone on this issue and against PSIC, declare that the single claim provision does not bar coverage, and find a contractual breach insofar as PSIC has not provided coverage on the laurels of this provision.

From here, WishBone alone moves for summary judgment on its declaratory judgment and contract claims (counts 1 and 2) based on the policy's pending or prior litigation exclusion, PSIC's other articulated basis for denying coverage. In its denial letter, PSIC expressed that, because the allegations in the federal suit were "based upon, arising out of and attributable to that" alleged in the state suit, the insurer would not cover the claim [78-15].

This particular exclusion says PSIC isn't liable to pay any loss from any claim against the insured "based upon, arising out of, or attributable to any Claim against any Insured which was pending on or existed prior to the respective Pending or Prior Date…or the same or substantially the same fact, circumstance or Wrongful Acts alleged in or underlying such prior Claim" [78-1]. In *Lafayette Life*, 784 F. Supp.2d at 1044, another presider construed materially similar "prior or pending litigation" language and rejected an insurer's attempt to use it to exclude coverage broadly. The court explained that the exclusion's "actual language…means that the Policy doesn't

cover a Claim that already has been litigated or is being litigated before the Policy's inception," but that the policy does cover "new Claims made during the…Policy Period that don't involve the same or substantially the same fact, circumstance, or situation underlying or alleged" in the earlier claim. *Id.* The court there held that "same or substantially the same" could reasonably be understood to involve "differing scopes of sameness," so the term was ambiguous in application and was construed in favor of coverage. *Id.* And the court rejected a notion that high-level similarities are enough: a "typological relation" between two claims didn't necessarily mean they are "all one in the same or even substantially the same" for this exclusion. *Id.* at 1044-45.

This exclusion doesn't bar coverage here. For similar reasons already discussed, and for reasons similar to those in *Lafayette Life*, the federal patent suit is not based on, arising out of, or attributable to the state suit. Nor does it involve "the same or substantially the same" facts, circumstances, or wrongful acts. At most, the two both generally involve OrthoPediatrics's legal rights and supposed breaches of different contracts or legal obligations by former OrthoPediatrics employees—"typological" relations that, without more, cannot be said to trigger this pending or prior litigation exclusion as a matter of law. Accordingly, WishBone is entitled to summary judgment that the pending or prior litigation exclusion doesn't bar coverage.

It is undisputed that the policy is a valid contract. *See State Farm Mut. Auto. Ins.*, 56 N.E.3d at 619. And under the policy, PSIC agreed to provide a defense for covered losses. It is also undisputed that WishBone tendered the defense to PSIC on November 13, 2020 [78-9]. PSIC never disputes coverage on this record save for these two policy provisions now found wanting on this record, and in truth really just the single claim provision. Accordingly, the claims that constitute the federal lawsuit fall within the policy. By not providing a defense and instead

17

denying the claim [*see* 78-15], PSIC breached the policy as a matter of law. The court thus enters summary judgment for WishBone on count 1 (requesting a declaration) and on count 2 (breach of contract) insofar as the company seeks such a finding on liability. Its partial summary judgment motion leaves damages on count 2 for a trial. And PSIC has not established that no reasonable factfinder could find damages attributable to its breach of the insurance policy.

B.  *Negligence Claim (Count 3).*

WishBone also asserts a negligence claim, arguing PSIC erroneously closed its claim. A negligence theory requires WishBone to prove three elements: "(1) a duty owed to the plaintiff by the defendant, (2) a breach of the duty, and (3) an injury proximately caused by the breach of duty." *Yost v. Wabash College*, 3 N.E.3d 509, 515 (Ind. 2014). "Whether a duty exists is generally a question of law for the court." *Id.* Without a duty, no viable negligence claim exists. *Ryan v. TCI Architects/Engineers/Contrs., Inc.*, 72 N.E.3d 908, 913 (Ind. 2017).

WishBone argues that PSIC breached a duty of reasonable care in investigating and handling their tender. But WishBone has not developed an argument that Indiana law treats ordinary negligence in claim handling as an independent tort basis for recovery; instead, Indiana recognizes a tort duty—implied in insurance contracts—for the insurer to deal with its insured in good faith. *Erie Ins. v. Hickman*, 622 N.E.2d 515, 518-19 (Ind. 1993). The "lack of diligent investigation alone is not sufficient" to establish this tort, *id.* at 520, and "poor judgment or negligence do not amount to bad faith," *Allstate Ins. v. Fields*, 885 N.E.2d 728, 732 (Ind. Ct. App. 2008). There must be "conscious wrongdoing," not mere negligent handling of a claim. *Id.*; *see also Travelers Indem. Co. v. Johnson*, 440 F. Supp.3d 980, 989 (N.D. Ind. 2020) (concluding Indiana recognizes "no cause of action in tort" for negligently failing to settle a claim). Accordingly, even

crediting WishBone's evidence that Nexus's administrator mistakenly "closed" the file and failed to communicate for an extended period, these facts have not been linked in law to support a negligence theory, nor in truth a breach of good faith and fair dealing all alone.

To the extent WishBone intended its negligence claim to plead the Indiana tort of bad faith, and recasts it as such now, the court likewise cannot award summary judgment on this record. Although the precise extent of this duty has not been conclusively defined, often to prevail on a bad faith claim a plaintiff must prove the insurer "(1) made an unfounded refusal to pay policy proceeds; (2) caused an unfounded delay in making payment; (3) deceived the insured; or (4) exercised an unfair advantage over the insured to pressure the insured into settling its claim." *Brandell v. Secura Ins.*, 173 N.E.3d 279, 284 (Ind. Ct. App. 2021). "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." *Colley v. Ind. Farmers Mut. Ins.*, 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998). An insurer hasn't acted in bad faith merely because it is ultimately wrong on coverage, *Hickman*, 622 N.E.2d at 520; *Fields*, 885 N.E.2d at 732, and there must be clear and convincing evidence "the insurer had knowledge that there was no legitimate basis for denying liability," *Ind. Ins. v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind. Ct. App. 1992), not just "[s]peculation and conjecture," *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013).

Though WishBone points out the undisputed evidence shows that PSIC audited Nexus's claim files just twice a year, that WishBone's claim seemingly wasn't included in any of these audits [78-2 Tr. 29], that PSIC didn't undertake any independent analysis to ensure claims were being handled appropriately [*id.* Tr. 56-57, 59], and that handling of the file didn't comport with Nexus's best practices [78-4 Tr. 163]—all troubling concerns that might show the insurer acted

negligently—WishBone has not established as a matter of law that PSIC acted with the type of dishonest purpose or moral obliquity that would indicate bad faith, not least when PSIC advanced what were, in its view, reasons for denying coverage, not just bungled the claim's processing. *See Colley*, 691 N.E.2d at 1261; *Hickman*, 622 N.E.2d at 518-19.[2] That these reasons may ultimately be found wanting under the law is not alone enough to establish bad faith. *See Freidline v. Shelby Ins.*, 774 N.E.2d 37, 42-43 (Ind. 2002) (affirming summary judgment for insurer on bad faith claim when the scope of the relevant policy exclusion was "an evolving area of law, subject to differing interpretations"); *Brandell*, 173 N.E.3d at 287-88 (denial of claim supported by a "rational basis" and "good faith legal arguments" insufficient because "[t]he lack of diligent investigation alone is not sufficient to support an award based on bad faith."); *Allstate Ins. v. Hammond*, 759 N.E.2d 1162, 1166 (Ind. Ct. App. 2001) ("Insurance companies may dispute claims in good faith, and a finding that an insurer breached its contract in denying a claim is insufficient by itself to support a bad faith claim.").

In short, the court denies summary judgment for both sides. WishBone has not developed sufficiently why it merits a liability finding on its negligence theory as a matter of law. And PSIC, which only argues the lack of damages for this claim, runs headlong into the reality that a reasonable jury could find damages to the extent WishBone could establish liability. The wiser course, given the scope and nascent development of arguments today, is to deny summary judgment rather than to make up the difference in presentations from both sides. After all, it would be inappropriate for the court, as a neutral arbiter, to construct arguments for the parties.

---

[2] WishBone raises the Indiana statute codifying unfair settlement practices, *see* Ind. Code § 27-4-1-4.5, but correctly notes that statute doesn't create a private right of action for parties to bring claims against insurers for bad faith, *see* Ind. Code § 27-4-1-1; *Neurological Resources, P.C. v. Anthem Ins. Cos.,* 61 F. Supp. 2d 840, 846 (S.D. Ind. 1999).

*See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (party presentation rule); *see also Margolin v. Nat'l Ass'n of Immigr. Judges*, 146 S. Ct. 1285, 1288 (2026) ("points not argued will not be considered"). Accordingly, the court denies the crossmotions for summary judgment on the negligence claim.

CONCLUSION

Accordingly, the court GRANTS IN PART AND DENIES IN PART WishBone and Nick A. Deeter's partial motion for summary judgment [75] and DENIES Professional Solutions Insurance Company's motion for summary judgment [64], insofar as the court GRANTS WishBone and Nick A. Deeter's motion as to count 1 (declaratory judgment) and count 2 (breach of contract) on liability alone, and DENIES the motions as to count 3 (negligence). Further proceedings will involve the remaining issues of negligence and damages as to the breach of contract claim, and the court will set a scheduling conference.

SO ORDERED.

July 30, 2026                          *s/ Damon R. Leichty*
                                       Judge, United States District Court